IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DE WITT LAMAR LONG, | Civ. No. 19-00235 JMS-RT |
| Plaintiff, | ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST, ECF NO. 25 |
| vs. | |
| RODNEY SUGAI; LYLE ANTONIO; WYATT LEE; and JOHN and JANE DOE(S) 1-50, | |
| Defendants. | |

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST, ECF NO. 25**

**I.  INTRODUCTION**

In this prisoner litigation, Defendants Rodney Sugai, Lyle Antonio, and Wyatt Lee (collectively, "Defendants") move for Summary Judgment, claiming that Plaintiff De Witt Lamar Long ("Plaintiff") failed to exhaust his administrative remedies before proceeding with the instant suit.  *See* ECF No. 25. Specifically, Defendants initially moved for summary judgment on Counts I and III, but now concede that Plaintiff exhausted Count I.  For the following reasons, the court DENIES Defendants' Motion for Summary Judgment.

///

///

## II. __BACKGROUND__

**A.      Procedural Background**

On May 6, 2019, Plaintiff filed his initial complaint.  ECF No. 1.  In a subsequent screening order, the court determined that Plaintiff asserted three colorable § 1983 claims related to his treatment as a Muslim and in retaliation for the filing of grievances, all while detained at Halawa Correctional Facility ("HCF").  ECF No. 6.  Plaintiff alleges that: 1) Sugai denied him kosher meals and/or gave Plaintiff food with pork products in violation of Plaintiff's Muslim faith, and then retaliated against Plaintiff for protesting this treatment (Count I); 2) in retaliation for filing grievances, Antonio moved him to a separate module where he could not attend Islamic services (Count II); and 3) during Ramadan,[1] Plaintiff was delivered meals four hours before he could consume them at sunset, was denied the right to reheat the food in a microwave, and thus "was forced to choose between abandoning [his] religious obligation to fast, in order to eat a hot meal or eat cold food" (Count III).  ECF No. 1 at PageID #8-10.  *See also* ECF No. 6 at PageID #33-34.

---

[1]  Ramadan is a holy month in the Muslim faith, which "is observed by prayer and fasting during daylight hours" and "[m]eals are taken pre-dawn and after sunset."  *Maloney v. Ryan*, 2013 WL 3945921, at *1 (D. Ariz. July 31, 2013).

On December 17, 2019, Defendants filed their Motion for Summary Judgment, moving to dismiss Counts I and III, arguing that Plaintiff failed to exhaust his administrative remedies as to these counts.[2]  *See* ECF No. 25.  On March 19, 2020, Plaintiff filed his concise statement of material facts in opposition,[3] and attached 25 exhibits.  ECF No. 39.  On May 1, 2020, Defendants filed a motion seeking to withdraw their Motion for Summary Judgment because Plaintiff presented the court with grievances that Defendants had never located. *See* ECF No. 42.  The court denied this motion to withdraw, and instead directed Defendants to "address [in their Reply] whether Plaintiff has exhausted his claims, considering the new grievances Plaintiff identified" and allowed a sur-Reply.  ECF No. 43.  Defendants filed their Reply on May 4, 2020,[4] and Plaintiff filed his sur-

---

[2]  HCF has adopted a three-step grievance process, with a final decision at step 3.  For a fuller description of this three-step process, see *Bolosan v. Tanigawa*, 2019 WL 3430764, at *3 (D. Haw. July 30, 2019).

[3]  Because Plaintiff is pro se, the court liberally construes his concise statement of facts as his Opposition brief.

[4]  After reviewing Plaintiff's Opposition, Defendants conceded in their Reply that Plaintiff exhausted his administrative remedies as to Count I.  *See* ECF No. 44 at PageID #280. In a declaration supporting the Motion for Summary Judgment, however, State of Hawaii Department of Public Safety ("DPS") Inmate Grievance Specialist Charles Laux stated that he had reviewed "all of the grievances submitted by [Plaintiff] between the dates of February 4, 2016 until June 29, 2017."  ECF No. 26-1 at PageID #124.  These grievances did not reflect exhaustion as to Count I.  Later, Defendants admitted that Laux neglected to locate three critical grievances showing that Plaintiff had in fact exhausted Count I (Grievance numbers 390149, 396030, and 396046).  *See* ECF No. 42 at PageID #272.  Defendants never explained why these three critical grievances were "inadvertently not forwarded to the Department of the Attorney General."  *Id.*  Given this glaring oversight, and the lack of any satisfactory explanation by

(continued . . .)

3

Reply on May 28, 2020.  ECF Nos. 44, 48.  The court finds this matter suitable for disposition without a hearing pursuant to Local Rule 7.1(c).

**B.      Grievance Related to Count III**

Plaintiff filed a Step 1 grievance on June 26, 2017, alleging that during Ramadan (starting May 26, 2017), his dinner came at approximately 3:30-3:45pm, he was unable to use the microwave to warm the food, and it sat for approximately four hours before he was able to consume it after sunset pursuant to his fasting obligations for Ramadan.  *See* ECF No. 26-13 (Grievance 390693). There is no indication that Plaintiff received any response or resolution to this grievance.  For example, there is no written response by DPS in the "Resolution" space on Grievance 390693.

---

Defendants, the court orders that no later than July 6, 2020, a person with knowledge of the details of this case and the grievance record keeping process at DPS provide the court with a declaration under oath setting forth: 1) a detailed explanation of how these three critical grievances went unnoticed; and 2) what steps, if any, are being taken by DPS to insure that this oversight is not repeated in future cases.

To the extent Defendants now raise a new statute of limitations argument as to Count I, the court will not consider it given the procedural posture of the instant Motion.  Further, the motion engages in no analysis regarding the running of the statute of limitations, including that the time during the internal exhaustion process is likely tolled.  *See, e.g.*, *Regan v. Dep't of Pub. Safety*, 2007 WL 3072775, at *7 (D. Haw. Oct. 18, 2007) ("The Ninth Circuit has determined that the statute of limitations for a civil rights claim by an incarcerated inmate should be tolled while the inmate exhausts the mandatory administrative grievance procedure pursuant to the PLRA") (citing *Brown v. Valoff*, 422 F.3d 926 (9th Cir. 2005)).

Plaintiff was subsequently transferred from HCF to Saguaro Correctional Center ("SCC") on June 29, 2017. *See* ECF No. 39-9 ("Inmate transferred to [SCC] on 6/29/17."). When he was transferred, Plaintiff made multiple follow-up requests for determinations on his outstanding grievances made at HCF.

Specifically, at an unidentified time (but sometime after June 26, 2017), Plaintiff asserts that because he did not receive a response as to his Step 1 grievance, he followed up by using his copy of his Step 1 390693 Grievance, and wrote that he was seeking to initiate a Step 2, naming it Grievance 396032. *See* ECF No. 39-16, *see also* ECF No. 39 at PageID #208 (noting that when Plaintiff "did not receive" an answer as to Grievance 390693 Step 1, he "sent step 2 #396032").

Further, on July 12, 2017, Plaintiff filed a Saguaro Inmate Request Form to "Ms. Bechler," stating, "I [received] response from a grievance from Halawa Correctional Facility which I must respond to. I have blank grievances from Halawa already assigned to my name may I use them or do I need to obtain different ones from you? Also I have outstanding grievances at Halawa some over due some not, what is the procedure?" ECF No. 39-17 at PageID #235. The response was "if they issued & recorded those #s for you yes if not then send them

to me for replacements on those & for the outstanding." *Id.* The response does not appear to answer Plaintiff's inquiry entirely.

On October 30, 2017, Plaintiff filed another Saguaro Inmate Request Form to the Grievance Coordinator, writing that he "respectfully request[s] for the third (3) time a step 3 grievance [form] three (3) of them for issues which stem from Halawa." ECF No. 39-18 at PageID #236. The response was "you need to file a 1st step 'informal resolution' before you get a formal grievance – read your handbook. Secondly, if you have a [Halawa] issue please talk to Ms. Bechler, your contract monitor here. I cannot give you a [Halawa] grievance." *Id.*

On November 5, 2017, Plaintiff filed a Saguaro Inmate Request Form to Ms. Bechler, writing that he was "requesting three (3) step III grievance forms to pursue issues which occurred in Halawa." ECF No. 39-19 at PageID #237. The response was "be more specific which 3[.] when I review there are none you qualify for rec. a form to pursue, either by exhausted steps or timeframes have expired." *Id.*

On November 12, 2017, Plaintiff submitted an Inmate Request form to Ms. Bechler, identifying specific grievances which he believed required Step 3 grievance forms. *See* ECF No. 39-20 at PageID #238. This included Grievance 390693 (which he filed a "step 2" grievance for, which he named Grievance 396032). *Id.* On December 12, 2017, prison staff noted that Grievance 390693

6

"[was] closed more than 120 days ago exceeding timeframe[]" and Grievance 396032 was "not [a] number[] on [Plaintiff's] gr. file," thus, "no forms will be issued." *See id.*

### III.  <u>STANDARD OF REVIEW</u>

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Federal Rule of Civil Procedure ("FRCP") 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact."  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (*citing Celotex*, 477 U.S. at 323).  "When the moving party has carried its burden under Rule 56[(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a genuine issue for trial."  *Matsushita Elec.*

*Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal

quotation signals omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

247-48 (1986) (stating that a party cannot "rest upon the mere allegations or

denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on

which a reasonable fact finder could find for the nonmoving party, and a dispute is

'material' only if it could affect the outcome of the suit under the governing law."

*In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (*citing Anderson*, 477 U.S. at

248).  When considering the evidence on a motion for summary judgment, the

court must draw all reasonable inferences on behalf of the nonmoving party.

*Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *see also Posey v. Lake Pend Oreille*

*Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence

of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn

in his favor" (citations omitted)).

## IV. <u>DISCUSSION</u>

Defendants claim that Plaintiff failed to exhaust Count III, which

alleges "that he was forced to eat cold food during the month of Ramadan in

2017."  ECF No. 44 at PageID #279-80.  Specifically, Defendants argue that

although Plaintiff filed a Step 1 grievance, he failed to file the required Steps 2 and

3 grievances.  Although it is clear that Plaintiff failed to file a Step 3 grievance as

to this claim, the court concludes that Plaintiff is excused from exhausting his administrative remedies.

## A. Exhaustion Requirement Under the Prison Litigation Reform Act of 1995 ("PLRA")

The PLRA "mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions." *Ross v. Blake*, 136 S. Ct. 1850, 1854-55 (2016) (quoting 42 USC § 1997e(a)). "There is no question that exhaustion is mandatory under the PLRA." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citation omitted).  Requiring exhaustion allows prison officials "an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Id.* at 204.  The "exhaustion requirement does not allow a prisoner to file a complaint addressing non-exhausted claims." *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010).

Regardless of the relief sought, "[t]he obligation to exhaust 'available' remedies persists as long as some remedy remains 'available.'  Once that is no longer the case, then there are no 'remedies . . . available,' and the prisoner need not further pursue the grievance." *Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)) (emphasis omitted). "The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" *Ross*, 136 S.

Ct. at 1862.  Thus, "an inmate is required to exhaust those, but only those,

grievance procedures that are 'capable of use' to obtain 'some relief for the action

complained of.'"  *Id.* at 1859 (quoting *Booth*, 532 U.S. at 738).

Failure to exhaust is an affirmative defense under the PLRA.  *Bock*,

549 U.S. at 216. The defendant bears the burden of proving that an available

administrative remedy was unexhausted by the inmate.  *Albino v. Baca*, 747 F.3d

1162, 1172 (9th Cir. 2014) (en banc).  If the defendant carries his burden, the

burden shifts to the inmate to "show that there is something in his particular case

that made the existing and generally available administrative remedies effectively

unavailable to him by 'showing that the local remedies were ineffective,

unobtainable, unduly prolonged, inadequate, or obviously futile.'"  *Williams v.*

*Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting *Albino*, 747 F.3d at 1172).

Regardless, "the ultimate burden of proof remains on the defendant."  *Albino*, 747

F.3d at 1172.

*Ross* outlined three "circumstances in which an administrative

remedy, although officially on the books, is not capable of use to obtain relief."

136 S. Ct. at 1859.  These are when: (1) the "administrative procedure . . . operates

as a simple dead end—with officers unable or consistently unwilling to provide

any relief to aggrieved inmates"; (2) the "administrative scheme . . . [is] so opaque

that it becomes, practically speaking, incapable of use . . . so that no ordinary

10

prisoner can make sense of what it demands"; and (3) "prison administrators

thwart inmates from taking advantage of a grievance process through machination,

misrepresentation, or intimidation." *Id.* at 1859-60 (citations omitted). Beyond

these limited circumstances, the mandatory language of § 1997e(a) "foreclose[s]

judicial discretion," which "means a court may not excuse a failure to exhaust, [or]

even to take [special] circumstances into account." *Id.* at 1856-57.

## B.    Analysis

Defendants argue—and Plaintiff does not dispute—that the claim in

Count III was not exhausted. *See* ECF No. 25-1 at PageID #112-13. Defendants

claim Plaintiff only filed a Step 1 grievance (i.e., Grievance 390693),[5] while

Plaintiff claims he tried to file a Step 2 grievance. ECF No. 39 at PageID #208. In

any event, the parties agree that Plaintiff never filed a Step 3 grievance. As such,

Defendants have met their initial burden that Plaintiff failed to exhaust his

administrative remedies as to Count III.

"The burden now shifts to [Plaintiff] to come forward with evidence

showing that . . . 'there is something in his particular case that made the existing

---

[5] Defendants also identify a number of other grievances filed by Plaintiff. *See* ECF No. 25-1 at PageID #107 (noting that there were 80 grievances filed by Plaintiff during the relevant time period, but identifying 17 which referred or related to Defendants, Plaintiff's Muslim beliefs or practices, or complaints of retaliation). The court finds only Grievance 390693 relevant to Plaintiff's Count III—that, during Ramadan, he was given food four hours prior to sunset while he was fasting.

and generally administrative remedies effectively unavailable to him.'" *Bolosan*, 2019 WL 3430764, at *4 (citing *Albino*, 747 F.3d at 1172).  In fact, Plaintiff identifies numerous unsuccessful attempts he made to file a Step 2 or Step 3 grievance.  Specifically, this includes attempting to use his copy of his Step 1 Grievance 390693 *as* a Step 2 and multiple follow-ups of his HCF grievances after he was transferred from HCF in Hawaii to SCC in Arizona.  *See* ECF No. 39 at PageID #208-11 (noting his "continued efforts of exhaustion").  Plaintiff has shown that he tried to pursue his administrative remedies and asked multiple times how to proceed with his grievances.  The responses to Plaintiff's multiple follow-ups amount to an administrative dead-end and/or provide instructions so "opaque it becomes, practically speaking, incapable of use . . . so that no ordinary prisoner can make sense of what it demands." *See Ross*, 136 S. Ct. at 1859-60. *See also Stewart v. Smith*, 2018 WL 3966280, at *5 (W.D. Tex. Aug. 17, 2018) (noting that there is a genuine issue of material fact regarding whether the grievance process was available to the prisoner when he brought forth "evidence showing that [prisoner made] multiple attempts to follow-up on his . . . Step 1 grievances" which "went unanswered").

        For example, when Plaintiff was initially transferred to SCC, he noted to Ms. Bechler (within two weeks of being transferred) that he

> [received] response from a grievance from [HCF] which
> [he] must respond to.  [He] ha[d] blank grievances from
> Halawa already assigned to [his] name [and asked if he]
> may . . . use them or do[es] [he] need to obtain different
> ones from [staff members at SCC]?  Also, [he] ha[d]
> outstanding grievances at [HCF] some over due some
> not, what is the procedure?

*See* ECF No. 39-17 at PageID #235.  The response was "[i]f they issued &

recorded those #s for you yes if not then send them to me for replacements on

those & for the outstanding."  *Id.*  It is unclear which part of Plaintiff's question

Ms. Bechler was responding to.  And, even if it was a response to the procedure for

the outstanding grievances, it is unclear what actions, if any, Plaintiff was to take

regarding his outstanding grievances from HCF.  Another time when Plaintiff tried

to follow up, the response was to contact Ms. Bechler, something Plaintiff had

already done.  *See, e.g.*, ECF No. 39-18 at PageID #236.  In short, in construing the

evidence in the light most favorable to Plaintiff, the court finds that these responses

are confusing, cursory, unclear, and oftentimes roundabout.

Accordingly, Plaintiff has met his burden to show that he took

"reasonable and appropriate steps" to exhaust Count III and "was precluded from

exhausting, not through his own fault."  *Nunez v. Duncan*, 591 F.3d 1217, 1224

(9th Cir. 2010).  That is, Plaintiff is excused from exhausting his administrative

remedies for Grievance 390693.

# V. **CONCLUSION**

For the foregoing reasons, the court DENIES Defendants' Motion for Summary Judgment.  Defendants are required to file a declaration, as directed in footnote 4 of this Order, no later than July 6, 2020.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, June 18, 2020.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Long v. Sugai, et al.*, Civ. No. 19-00235 JMS-RT, Order Denying Defendants' Motion for Summary Judgment for Failure to Exhaust, ECF No. 25.